# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

MICAH BRAY,

        Petitioner,

        -vs-

WARDEN, Lebanon Correctional
  Institution,

        Respondent.

:

:

:

Case No. 3:12-cv-303

District Judge Timothy S. Black
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS ON MOTION FOR RELIEF FROM JUDGMENT

    Petitioner Micah Bray filed this habeas corpus action to obtain relief from his conviction in the Clark County Common Pleas Court and imprisonment sentence which is being served in Respondent's custody (Petition, Doc. No. 1). The Magistrate Judge filed a Report and Recommendations (the "Report," Doc. No. 4) recommending that the Petition be dismissed with prejudice. Bray sought and received a sixty-day extension of time to December 11, 2012, to file objections (Doc. No. 6). When his objections had not been received by December 12, 2012, the Court adopted the Report and dismissed with case (Doc. Nos. 8 and 9).

    Petitioner's Objections have now been received and filed (Doc. No. 10). Because they show a mailing date of December 7, 2012, they are entitled to be deemed filed as of that date under the "mailbox" rule. *Houston v. Lack,* 487 U.S. 266 (1988); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Because the Objections are timely but a judgment has already been entered,

1

the Court will treat the Objections as a motion for relief from judgment under Fed. R. Civ. P. 60(b), which is, by General Order of Assignment and Reference DAY 12-03 referred to the Magistrate Judge for report and recommendations. 28 U.S.C. § 636(b)(3).

Petitioner pleads the following grounds for relief:

**Ground One:** Insufficient evidence – 5th and 14th Amendments

**Supporting Facts**: None of the Statutory Requirements for Tampering with Evidence were proven, much less proven beyond a reasonable doubt. No evidence was adduced that the Petitioner had in his possession or disposed of the gun after the altercation, which violates Due Process under the 5th and 14th Amendments of the U.S. Constitution.

**Ground Two:** Allied offenses punished by maximum consecutive sentences violating 5th Amendment Double Jeopardy and Due Process Clauses.

**Supporting facts**: The imposition, as in this case, of Maximum Consecutive Sentences for the violation of multiple Statutes, by a single action violates the Double Jeopardy Clause of the 5th Amendment, and results in a violation of Due Process under the 5th and 14th Amendments.

**Ground Three:** Ineffective Assistance of counsel, 5th, 6th, 14th Amendments.

**Supporting facts:** Counsel gave the Petitioner erroneous legal advice to enter a guilty plea to a charge before Trial that he was not guilty of and would not have entered such a plea had it not been for that advice, violating the 6th Amendment right to Effective Counsel, which violates the 5th and 14th Amendment Fair Trial and Due Process Clauses.

**Ground Four:** Defective indictment 5th and 14th Amendments

**Supporting facts:** The Grand Jury Indictment did not contain the Jury Foreperson's signature in all appropriate places, and as such, did not comport with all Statutory Regulations. This violates Due Process under the 5th and 14th Amendments.

**Ground Five:** When law changes, making action no longer criminal, Petitioner should benefit. 5th and 14th Amendments.

> **Supporting facts**: During pendency of Appeal, the law changed concerning Possession of a Firearm in a Liquor Permit Premises, 2923.121, a charge for which this Petitioner received a 3-year sentence, making it legal to possess a firearm in such an establishment. The Court of Appeals would not grant relief, violating the Petitioner's rights under the 5th and 14th Amendments.
>
> **Ground Six**: Erroneous evidentiary rulings in imposition of sentence.
>
> **Supporting facts:** The Court, in imposing maximum consecutive sentences, relied on facts which were found to be false by the Jury, and nonexistent [sic]. The use of these improper enhancement factors violate [sic] Due Process under the 5th and 14th Amendments.

(Amended Petition, Doc. No. 3, PageID 20-26.)

## Adjudication under Rule 4

The Magistrate Judge found the case appropriate for final adjudication under Rule 4 of the Rules Governing § 2254 Cases which provides in pertinent part:

> If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner.

Petitioner objects that the Magistrate Judge

> did not cite any reasoning in the R&R as to why Rule 4 may apply to this case, but did address it in a later pleading. That response was not persuasive or well-reasoned, and it still appears to constitute an abuse of discretion to invoke this Rule and champion the Respondent's position. All Judges, even Federal Magistrates, are required to be impartial, yet here the Magistrate [Judge] has elevated his position to advocate for the Respondent, basically saying, "I'll handle this." This misuse of Rule 4 seems to be a common theme in cases before this Magistrate, and only this

> Magistrate. This practice, which must seem common to those who come before Magistrate [Judge] Merz, is rare in any other District. This is because such an action is actually an abuse of discretion, and it should be stopped.

(Objections, Doc. No. 10, PageID 57.)[1]

The reasoning previously offered for proceeding under Rule 4 appears in the Decision and Order Granting Extension of Time and Providing Clarification as follows:

> Petitioner also questions whether a report and recommendations is procedurally proper under Habeas Rule 4 without any return of writ or traverse having been filed. [Quotation of Rule 4 omitted.] The Amended Petition [footnote omitted] in this case advises the Court of where and when Petitioner was convicted, the offenses of conviction, and much of the procedural history after conviction, including the appellate courts which considered the case. It also includes Petitioner's grounds for relief and a section indicating how the Amended Petition has been timely filed, i.e., why it is not barred by the statute of limitations. Petitioner pleads that all of his Grounds for Relief were raised on direct appeal and he has not filed any other collateral attacks on the judgment besides his Petition.
>
> It is now the case in Ohio that virtually all opinions by the courts of appeals and all the decisions of the Ohio Supreme Court are available to the public in multiple places on the Internet. As indicated by the citation at page 3 of the Report, the opinion of the Second District Court of Appeals in Mr. Bray's case is available both on the website of the Ohio Supreme Court under the citation 2011-Ohio-4660 and in the Ohio Appellate database maintained by Lexis-Nexis under the citation 2011 Ohio App. LEXIS 3857. It may well be maintained in other online databases as well, including probably that maintained by Westlaw. It is appropriate for a judge to take judicial notice of public records. Public records and government documents, including those available from reliable sources on the Internet, are subject to judicial notice. *United States ex rel Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003).

---

[1] Bray's objection here is similar in substance, although much more civil in tone, to the objection to use of Rule 4 made and rejected in *Hauptstueck v. Warden*, 2012 U.S. Dist. LEXIS 171899 (S.D. Ohio Dec. 4, 2012).

4

> As noted in the Report (Doc. No. 4, PageID 35), when a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter,* 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton*, 544 U.S. 133, 140 (2005); *Bell v. Cone,* 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000). In a case such as this when a petitioner asserts his claims have been decided on the merits by the state courts and the decision of those courts are readily available to the habeas court, there is no need to obtain them by ordering the State to file an answer. The Court can readily determine whether the state court decision is entitled to deference under 28 U.S.C. § 2254(d)(1). That is what has happened in this case.
>
> One usual function of an answer is for the State to raise affirmative defenses such as the bar of the statute of limitations, lack of exhaustion, or procedural default. In any habeas case where such defenses are raised in the answer, the petitioner appropriately has an opportunity to respond in the reply or traverse. But where no affirmative defenses have been raised, there is no occasion for a traverse.
>
> Rule 4 was cited because it provides the first step in consideration of a habeas petition on the merits. Mr. Bray complains that, instead of dismissing the Petition, the Magistrate Judge gave a detailed merit analysis, which, he suggests "would not be required if it 'plainly' appeared that relief was not available." ((Motion, Doc. No. 6, PageID 46.) However, a Magistrate Judge cannot exercise the authority in Rule 4 to dismiss a petition himself or herself. Instead, he or she must make a recommendation to the assigned District Judge who alone has authority under Article III of the Constitution to enter a final judgment dismissing the Petition. Even if a result is plainly required, it may take an explanation of some length to show that. Certainly Petitioner is not prejudiced by receiving a full explanation because that enables him to be thorough in his objections.

(Decision, Doc. No. 7, PageID 49-52.)

In Petitioner's view, the proper method for adjudicating habeas corpus cases is always to require an answer for the Respondent to deny, if appropriate, "the factual allegations contained in

the Petition." (Objections, Doc. No. 7, PageID 57).  Then, he says, a petitioner can make a "complete presentation of the claim in the Traverse." *Id.*

This view assumes a petitioner is entitled to have the Court order an answer and is also entitled to wait for the reply (sometimes known as a "traverse") to make a "complete presentation."  But that is not what the Rules Governing § 2254 Cases or the governing statutes provide.  Rule 4 says the assigned district judge "must dismiss" the petition if it "plainly appears" to be without merit.  Only if it is not dismissed is he or she to order an answer.  Prior to that, the respondent does not even get served with the petition and has no occasion to oppose it. Rule 5(a) expressly provides that the respondent is "not required to answer the petition unless a judge so orders."  In other words, it is not an abuse of discretion to consider the merits before ordering an answer.  Instead, the Rules require it.

Furthermore, the function of the answer is not just to deny allegations in the petition and raise affirmative defenses.  Instead, Rule 5 also requires the State to prepare and file a copy of the state court record which is a major undertaking for the Attorney General's Office, which must obtain the record from the local clerk of court.

During the period of time when all habeas review was *de novo*, the federal court would need the full state record.  Furthermore, until fairly recently, and certainly when the Habeas Rules were adopted in 1976, the only way to obtain opinions of state court judges was to have them manually copied and provided in paper form.  Since adoption of the AEDPA in 1996, habeas review is not *de novo* on most issues.  Furthermore, as noted in the Decision and Order … Clarifying, most appellate and an increasing number of trial decisions are now readily available on the internet, obviating the need to wait for paper copies.  (Doc. No. 7, PageID 50.)

Mr. Bray is right that dismissal on initial review under Rule 4 is relatively rare throughout the country. A leading study reported: "few noncapital habeas cases are summarily dismissed. . . . Six in ten noncapital cases included at least one responsive motion and brief by the state and a reply by the petitioner." Habeas Corpus for the Twenty-First Century, Nancy J. King and Joseph L. Hoffman (2011), p. 80, reporting results from King, Cheesman, and Ostrom, Final Technical Report: Habeas Litigation in U.S. District Courts: An Empirical Study of Habeas Corpus Cases Filed by State Prisoners Under the Antiterrorism and Effective Death Penalty Act of 1996 (available at www.ncjrs.gov.) So apparently 60% of the noncapital petitioners studied had a chance to file something beyond the petition. However, the results of such filings are very rarely favorable. Of the 1, 993 cases randomly chosen for study, only seven obtained a writ, or less than one-tenth of one percent. *Id.* at p. 81. Despite this very low rate of success, "[t]he proportion of the federal judiciary's workload taken up by habeas litigation today is larger than it was in the 1960s. . . ." *Id.* at p. 83. Professors King and Hoffman propose a radical restriction on habeas jurisdiction over noncapital state convictions, a proposal which requires Congressional approval. But their conclusion strongly suggests it is not an abuse of discretion to consider these cases carefully under Rule 4 before imposing the burden of additional litigation on the States.

**The Merits of the Objections**

**Ground One: Insufficient Proof of Tampering with Evidence**

Bray contends his conviction for tampering with evidence is not supported by sufficient evidence, a claim he acknowledges was decided on the merits on direct appeal (Petition, Doc.

7

No. 1, PageID 5).  The Report noted that two levels of deference to sufficient evidence findings are required by AEDPA (Report, Doc. No. 4, PageID 36-37, citing *Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(*per curiam*); and *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)).  Petitioner objects that the review should be *de novo* "since the Court of Appeals based its decision on erroneous facts not supported by the record, as well as a meaningless fact" (Objections, Doc. No. 10, PageID 58.)

On direct appeal, Bray argued he could not be convicted of tampering with evidence because the gun had never been recovered.  The court of appeals relied not only on the fact that the gun was missing, but also on the fact that Bray admitted that he took from the scene two live .38 caliber bullets which had been in the gun before the struggle began.  The bullets were also evidence which Bray admitted removing from the scene and thereby "tampering" with.  The additional evidence that Bray was carrying a balled-up shirt in two hands supports the conviction because the inference evidently made by the jury that the gun was in the balled-up shirt was a reasonable one.  *Jackson v. Virginia*, 443 U.S. 307 (1979), does not require that all elements be prove by direct or eyewitness testimony.

The State at trial and the court of appeals relied also on the testimony that two shots were fired in the parking lot by someone whom a witness identified as Bray.  The witness may have been mistaken.  Bray points out in his Objections that there was testimony that someone else fired those shots and that the shell casings recovered were from a different caliber weapon.  Even if that evidence were put aside, there was sufficient evidence for conviction.  But in doing analysis under *Jackson v. Virginia*, that evidence should not be put aside.  Just because there was competing evidence does not mean the jury was not entitled to credit the witness who said the

shots were fired by Bray. Under *Jackson*, all evidence must be construed in favor of the prosecution.

Bray also quarrels with the Report's finding that it was proper to infer Bray's purpose of removing the gun and the two live rounds was "to impair its value or availability as evidence." (Objections, Doc. No. 10, PageID 61.) The Report noted that when a criminal statute requires proof of a purpose, that element must always be inferred from the circumstantial evidence. For example, if a person fires three bullets at point blank range into the back of another person's head but fails to say, "Yeah, I intended to kill him," the mere fact of using that kind of deadly force in those circumstances would support the inference of purpose necessary to support an aggravated murder conviction.

**Ground Two: Double Jeopardy**

In his Second Ground for Relief, Bray contends his sentence, which includes maximum consecutive sentences for the violation of multiple statutes, violates the Double Jeopardy Clause. The Report found this claim preserved for habeas review but without merit because each of the statutes Bray violated had at least one element different from the elements of the other statutes, thus satisfying the *Blockburger* test. *United States v. Dixon*, 509 U.S. 688, 696-97 (1993), citing *Blockburger v. United States*, 284 U.S. 299 (1932).

Bray objects that the proper precedent is not *Blockburger*, but *North Carolina v. Pearce*, 395 U.S. 711 (1969), overruled on other grounds by *Alabama v. Smith*, 490 U.S. 794 (1989).[2] *Pearce* is not about multiple punishments imposed for the same offense on one occasion, but

---

[2] Bray does not contest the Report's *Blockburger* analysis, to wit, that each of the offenses of which he was convicted has at least one element which is different from the other offenses.

9

about multiple punishments imposed for the same offense on retrial; its core holding is that when a person is retried after a successful appeal, he must be credited with the time spent in prison on the first (reversed) conviction. The *Pearce* Court did say that a person may not receive multiple punishments for the same offense. 395 U.S. at 717, citing *Ex parte Lange*, 18 Wall. 163 (1873); *United States v. Benz*, 282 U.S. 304, 307 (1931); *United States v. Sacco*, 367 F.2d 368 (2nd Cir. 1966); *United States v. Adams*, 362 F.2d 210 (6th Cir. 1966);  and *Kennedy v. United States*, 330 F.2d 26 (9th Cir. 1964). *Id.* at n. 11. But that is not the same as saying a person may not be punished for separate offenses committed in one act. For example, a person with a felony conviction who carries a concealed handgun into a liquor store, pulls the gun, demands money, and then shoots the cashier dead can arguably be said to have done one "act." But many different offenses, within the meaning of the Double Jeopardy Clause, are involved in that act.

### Ground Three:  Ineffective Assistance of Counsel

In his Third Ground for Relief, Bray claims he received ineffective assistance of trial counsel when his attorney advised him to plead no contest to the weapons under disability claim. The Report concluded the court of appeals' decision on this claim was neither contrary to nor an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984).

Bray objects that the relevant precedent is not *Strickland*, but *Hill v. Lockhart*, 474 U.S. 52, 57 (1985), in which the Supreme Court held that the Strickland analysis applies in negotiated plea cases. As the Objections note, in order to satisfy the "prejudice" prong of *Strickland* in a negotiated plea case, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty or no contest and would have insisted on

going to trial. *Hill*, 474 U.S. at 58. (Objections, Doc. No. 10, PageID 63). Bray says this is simple to prove since he went to trial on the other charges. But that is exactly the point made in the Report:

> The decision to forego a jury trial on a weapons under disability claim which is linked to much more serious charges it not in any way unusual or a questionable tactic. Proving the disability usually means allowing the jury to hear about a prior conviction, perhaps more than one. It is well known that this makes it difficult rhetorically for a defendant to retain with a jury the presumption of innocence to which he is entitled.

(Report, Doc. No. 4, PageID 41.) Bray says the conviction that created the disability was only a misdemeanor and therefore would have made no difference with the jury. He does not say what sort of misdemeanor and the prior offenses which qualify to create disabilities in Ohio Revised Code § 2923.13 are felonies. In any event, even if it is debatable whether the jury would find the prior conviction a blot on Bray's credibility, counsel is entitled to the benefit of the doubt when debatable trial tactics are in question. Bray also objects that "it is possible [the charge] was not even statutorily sound," (Objections, Doc. No. 10, PageID 64), but he makes no argument in support of that claim.

### Ground Four: Defective Indictment

In his Fourth Ground for Relief, Bray asserts his indictment was not signed in all the appropriate places by the grand jury foreperson in violation of Ohio statutory requirements. The court of appeals expressly found that the indictment was signed as required under Ohio law. The Report noted that this Court cannot reexamine state court decisions on state law questions and, in any event, there is no federal constitutional right to grand jury indictment. (Report, Doc. No. 4,

11

PageID 41, citing *Hurtado v. California*, 110 U.S. 516 (1884); *Branzburg v. Hayes,* 408 U.S. 665, 687-88 n. 25 (1972); and *Gerstein v. Pugh,* 420 U.S. 103 (1975)).

The Objections assert that violation of the Ohio constitutional guarantee of grand jury indictment also violates the Due Process Clause of the Fourteenth Amendment, *citing Erwin* [sic. Petitioner's name in that case was Ervin] *v. Warden*, 2010 WL 1257900 (S.D. Ohio, Jan. 12, 2010)(Merz, M. J.). On the contrary, in that case the undersigned Magistrate Judge expressly held:

> While Petitioner has an Ohio constitutional right to grand jury indictment, there is no such federal constitutional right. That is, the Grand Jury Clause of the Fifth Amendment applies only to federal criminal charges and not to state charges. *Hurtado v. California*, 110 U.S. 516 (1884); *Branzburg v. Hayes*, 408 U.S. 665, 687-88 n. 25, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Williams v. Haviland*, 467 F.3d 527 (6th Cir.2006).

*Id..* at * 2. *Ervin* is precedent squarely against Bray's position.

### Ground Five:  Change in the Law

In his Fifth Ground for Relief, Bray claims that while his case was pending on appeal, Ohio changed the law and began to permit carrying a weapon inside a liquor permit premises, an offense for which he was convicted and sentenced. The Report concluded that the legislature had not and was not constitutionally required to make this new law retroactive, so as to require the release of those convicted before the new law was passed (Report, Doc. No. 4, PageID 42).

Bray objects that this statement is contrary to law, relying on *Davis v. United States*, 417 U.S. 333 (1974), and *Bouie v. City of Columbia*, 378 U.S. 347 (1964) (Objections, Doc. No. 10,

PageID 66). *Davis* did not involve adoption of a new statute, but application of a new interpretation of the law by the Supreme Court of the United States which that Court itself held would be applied to a case pending on appeal when the new interpretation was handed down. *Bowie* involved a new judicial construction of a trespass statute by the South Carolina Supreme Court which applied it to persons who failed to leave a store after notice, as opposed to the prior construction, in which it applied only to those who received notice prior to entry. The U. S. Supreme Court struck down the convictions under the new interpretation as essentially a violation of the Ex Post Factor Clause which makes it unconstitutional to criminalize conduct which was innocent at the time it was done. The Magistrate Judge is unaware of any decision by the Supreme Court which holds that conduct which was criminal at the time it was done must be excused when the legislature "liberalizes" the law by making the conduct legal in the future.

## Ground Six: Erroneous Evidentiary Rulings in Sentencing

In his Sixth Ground for Relief, Petitioner asserts the trial court made findings of fact contrary to what the jury had decided. The Report concluded this claim was without merit because the court of appeals found the sentences imposed were within the limits provided by law for the offenses of conviction (Report, Doc. No. 4, PageID 42-43.)

The Objections make it clear that Bray is complaining of the trial judge's considering acquitted offenses (murder, attempted murder, and felonious assault) in imposing sentence (Objections, Doc. No. 10, PageID 66-67). The court of appeals' opinion does not reflect any such consideration by the trial judge. Instead, the court of appeals noted

> Initially, we note that Bray concedes that the sentences imposed by
> the trial court are within the applicable statutory ranges for the

> offenses. We also note that the trial court affirmatively stated in its second amended judgment entry that it considered both R.C. 2929.11 and 2929.12 before imposing sentence. At the sentencing hearing the trial court discussed Bray's extensive criminal record including convictions for receiving stolen property, misdemeanor drug abuse, negligent assault, three separate domestic violence incidents, disorderly conduct, attempted tampering with evidence, and tampering with evidence. The trial court also noted that Bray testified that he was arranging an illegal drug sale on the day of the shooting and specifically found his testimony regarding his use of the handgun to not be credible. It is clear from the record that the trial court did not abuse its discretion when it considered the appropriate statutory factors before sentencing Bray to maximum consecutive sentences.

*State v. Bray*, 2011-Ohio-4660, ¶ 30, 2011 Ohio App. LEXIS 3857 (Ohio App. 2nd Dist. Sept. 16, 2011).  This does not show any consideration of unlawful factors.

## Conclusion

Based on the foregoing analysis, it is again respectfully recommended that the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree, the Court should deny Petitioner a certificate of appealability and should certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

December 17, 2012.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).